## In re CANAL PLACE IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    November 16, 1906.)

1. DEEDS—DESCRIPTION—PROPERTY INCLUDED.
   Where a deed conveyed all the property between certain streets including specified plots as shown on a certain map without reservation, and the map showed that two of the lots were bounded by a plot of land laid out as a specially excavated canal, the deed passed title to the canal land.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Deeds, § 324.]

2. MORTGAGES—PROPERTY INCLUDED—CONVEYANCE BY MORTGAGOR.
   The grantees in a deed including a plot of land laid out as a specially excavated canal treated the canal strip as their own property and filed a map in 1868 which eliminated the canal and substituted a street therefor through the middle of a block. They thereafter mortgaged the property under a description which included all the property they had acquired under the deed, except a certain frontage of 100 feet on a street. They thereafter entered into possession and excavated the canal, which was subsequently operated, and after the execution of the mortgages they conveyed all their interest in the block containing the canal to a corporation. Held, that on foreclosure of a mortgage the property covered by the canal passed to the purchaser thereunder, and not to the grantees in the mortgagors' deed made subsequent to the mortgage.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 249.]

3. EMINENT DOMAIN—DAMAGES—APPORTIONMENT—EASEMENTS—NOMINAL FEE.
   Where land reserved and operated by its owner as a canal, though subject to an easement of use by abutting owners, was taken for public use, and there had never been any public dedication of such land, the holders of the easements could not complain because the owner of the canal land was awarded the value of the fee.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 403.]

Appeal from Special Term, New York County.

Application by the city of New York for the acquisition of title to lands and premises not previously acquired necessary for the opening and extending of Canal Place. From an order of the Special Term, confirming a report of the commissioners of estimates and assessments, the city and others appeal. Reversed, and report recommitted to commissioners.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

John P. Dunn, for appellant city of New York.
Edward S. Kaufman, for appellant Mott Haven Co.
Adolph C. Hottenroth, for appellants Bell and Hall.
Walter B. Hopping, for appellants heirs of William E. Rider.

Edward L. Patterson, for appellant Antonio Knauth.
Hector M. Hitchings, for respondent Mott Haven Canal Docks.
Augustus Van Wyck, for respondents Wilson and others.
Charles I. Taylor, for respondent New York Edison Co.
Edmund L. Mooney, for respondent Gray.

INGRAHAM, J. Many questions are presented on this appeal, which involve various pieces of property taken by the city of New York for a public street. The commissioners have made awards for the property taken which have been confirmed by the Special Term, and from each and every part of the order confirming that report the city of New York has appealed, and the owners of portions of the property taken have also appealed.

We may stop here and determine two questions which will dispose of the claim of several of the appellants. In the first place, I think that the deed from Mott to Bryant conveyed all the property between Van Stoll street and Main street, including the bed of what was designated on the map, "Canal Specially Excavated and Its Continuance to Main Street." The conveyance expressly included plots B, C, and E. Whether or not the canal had been actually excavated seems to be entirely immaterial. Nothing was reserved in this block. The grantor had parted with all his property therein. The conveyance was based upon a map annexed to it which showed two of the lots bounded by the plot of land laid out as a specially excavated canal. All parties seem to lay stress upon the cotemporaneous construction given to this conveyance by the parties to it; but a fair consideration of all the circumstances fails to show that any of the parties to this conveyance, or their grantees, understood that Mott retained any interest in the bed of this canal. Rider and Conkling certainly treated it as their own property, making and filing a map in 1868 which eliminated the canal and substituted a street through the middle of the block, and mortgaged the property to the Knickerbocker Life Insurance Company. Neither Jordon L. Mott, during his life, nor his heirs, devisees, or executors after his death, from the date of this conveyance in 1864, down to June 30, 1892, apparently made any claim to this property or any interest in this block. In 1892 the appellant Mott Haven Company was incorporated by various members of the Mott family, and on June 2, 1892, the executors of Jordon L. Mott and those entitled to an interest in the Mott estate united in a deed to this Mott Haven Company, which conveyed all the right, title, and interest of, in, and to all property of which the said Mott died seised. No claim was specifically made to any property within this block, and so far as appears the first claim that the Motts ever made to any portion of this property was when these proceedings were commenced. On the other hand, Rider and Conkling and their grantees assumed absolute control over this canal. As before stated, in 1868 they filed a map abolishing the canal and substituting a street for it. By that map they mortgaged all the property, except a frontage on Van Stoll street of 100 feet in depth, to the Knickerbocker Life Insurance Company. Subsequently they entered into possession of the premises and actually excavated a canal, which was main-

tained until the commencement of this proceeding. Their title to the property had never been questioned, and for upwards of 30 years they and their grantees had been in its undisputed possession.

Applying the usual rules applicable to the conveyances of property, based upon a map or plan which is made a part of the conveyance, I think that the property included within the bed of this canal was included within the original conveyance by Mott, and that, therefore, the Mott Haven Company were entitled to no part of these awards. I also think that all of the property of Rider and Conkling included in the bed of the canal was covered by the mortgages to the Knickerbocker Life Insurance Company. This mortgage was dated June 17, 1868, and was to secure the payment of $65,000. On July 23, 1869, Rider and Conkling executed a second mortgage to the Knickerbocker Life Insurance Company to secure the payment of $60,000, which seemed to cover all of the lots in this block which abutted on the canal. By these two mortgages all of Rider's and Conkling's interest was mortgaged. Subsequent to the execution of these mortgages Rider and Conkling conveyed certain portions of these premises, which were released from the lien of the mortgage, and subsequently conveyed all the interest in this block to the Mott Haven Canal Docks Corporation by deed dated March 26, 1886. It seems that an action was commenced to foreclose these mortgages, and a judgment was entered on September 25, 1882, under which all the premises, included within this block and covered by the mortgages to the insurance company, were directed to be sold, and in pursuance of that judgment a referee therein appointed conveyed by two deeds, dated the 26th of March, 1882, the mortgaged premises included within this block to the Knickerbocker Life Insurance Company. Before this sale it appeared that Rider and Conkling dredged the canal up to Main street, now 144th street, and were in possession of the canal and the property abutting upon it. On the 29th day of December, 1882, the life insurance company was dissolved by a judgment of the Supreme Court, and Charles H. Russell was duly appointed receiver. Subsequently he conveyed various lots abutting upon this canal to various grantees. The deeds from Russell, receiver, to the purchasers of these lots, recited the dissolution of the life insurance company and the appointment of Russell as receiver; that there came into possession of the receiver of the life insurance company the property conveyed; the sale of said property at public auction, with the approval of such sale by the Supreme Court, whereupon the receiver conveyed to the purchasers the property sold. A sample of the description is as follows:

"All eight certain lots, pieces, or parcels of land, situate, lying, and being in that part of the city of New York which formerly constituted the village of Mott Haven, town of Morrisania, county of Westchester, state of New York, which, taken together, are bounded and described as follows: Beginning at a point designated by a monument located on the easterly line or side of a proposed street or avenue, to be called 'Railroad Avenue East,' as the same is laid down on a certain map entitled 'Map of the Town of Morrisania. Made by and under the Commissioners Appointed under an Act Entitled "An Act for the Laying Out, Opening and Closing of Streets, Roads and Avenues in the Town of Morrisania, in the County of Westchester," passed May 19, 1868,' said point being distant northerly three hundred and two and $^{46}/_{100}$

feet from the northeasterly corner of One Hundred and Thirty-Eighth street and said Railroad Avenue East, as the same are laid down on said map, and running thence easterly at right angles to the aforesaid avenue two hundred and twenty-two and $4/100$ feet, more or less, to the westerly bank or line of the Mott Haven Canal, as the same is laid down on said map; thence southerly, along the said westerly line of said canal, one hundred feet; thence westerly, and at right angles to said canal, two hundred and twenty-two and $4/100$ feet, to the easterly line of said avenue; thence northerly, along the easterly line of said avenue, one hundred feet, to the point or place of beginning. Being the eight lots, which are designated by the numbers one hundred and ninety (190) to one hundred and ninety-seven (197), both inclusive, on an 'Amended Map of Central Mott Haven,' made by George S. Greene, Jr., civil engineer, and filed in the register's office of said county of Westchester."

The other conveyances made by the receiver are in like form, except as to the specific property conveyed, and it would seem to be quite clear that these conveyances conveyed to the grantee no interest in the canal, if any interest there was vested in the life insurance company. It subsequently appears that the receiver of the insurance company was discharged. By these various conveyances there was granted to the grantees from the receiver "the right of way through, over, and along the said Mott Haven Canal at any and all times hereafter, and the right to enter upon and navigate said canal with boats or otherwise, and to have free access, ingress, egress to and from said canal, and to use the same for the purposes of receiving and delivering all cargoes' at any of said lots or lands, and the same rights for any and all boats consigned to said party of the second part, his heirs and assigns, aforesaid," subject to the payment of a toll not exceeding two cents per ton upon the tonnage of each boat so entering and navigating said canal, such tolls to be retained and used as a fund "for putting and keeping said canal in proper repair and in a navigable condition, to pay the lock keeper and other necessary employés, and to pay the taxes and other necessary charges thereon"; the canal docks company covenanting to keep the canal in good repair and a navigable condition. Subsequently, on March 30, 1886, certain deeds were executed between the Mott Haven Canal Docks Company and Charles H. Russell, as receiver of the life insurance company. These instruments recited the giving of the mortgages, the dissolution of the life insurance company, and the appointment of Russell as receiver; that he was the owner as such receiver of certain described lots, which are included in this block; and that serious controversies had arisen between Rider, who had been the grantor of the Mott Haven Docks, and said Russell, as receiver, as to the right of Russell, as receiver, or any of his grantees, to navigate the said canal, or to use the same for any purpose connected with said lands, without the consent of the party of the first part (canal docks company) and the payment of an annual rental therefor; and the Mott Haven Docks Company, in consideration' of the sum of $19,-313.39, paid by Russell as receiver, granted, bargained, and sold unto Russell, as such receiver, his successors, "assigns, and grantees of all and any portion of said premises now owned by him as such receiver, the right of way through, over, and along the said Mott Haven Canal at any and all times, forever, * * * and the right to enter upon and navigate said canal, with boats or otherwise, and to have free ac-

cess, ingress, and egress to and from said canal, and to use the same for the purposes of receiving and delivering all cargoes at any of said lots," and also containing substantially the same covenants as contained in the agreement between the canal company and the grantee of Russell. Russell, as receiver, having conveyed all the said premises, except the bed of the canal, was, on the 23d of December, 1887, duly discharged as receiver.

I cannot see why, if, as claimed by the canal docks company, the title to the bed of this canal passed to Rider and Conkling by the conveyance from Mott, that the same property was not covered by the mortgage to the life insurance company. The same description was used, and whatever property was covered by the insurance company mortgage was foreclosed, and the title acquired by that company by virtue of the deed from the referee under the judgment of foreclosure. It is quite clear, however, that the title to the canal was not conveyed by Rider as receiver to the grantees of the lots abutting on it. So that, as I look at it, the title to the fee of this canal has never been divested from the life insurance company. Whatever title Rider and Conkling got to this property they mortgaged to the life insurance company. Whatever was mortgaged to the insurance company was foreclosed and conveyed by the referee's deed to the life insurance company, the same description being used in both instances, and therefore there was no title in the Mott Haven Canal Docks Corporation. The commissioners, after fixing the total value of the property to be taken for this street, apportioned the award, allowing to the owners of the lots abutting on the canal the value of their easement, and awarding to the Mott Haven Docks Corporation the sum of $36,740 as compensation for its property in the street. Most of the owners of property abutting on this street have acquiesced in this award, and after a review of the testimony I think that this award to the abutting property owners for their easement in the canal should be sustained. These abutting owners, however, have no possible right to the award for the fee of the bed of the canal. The principle insisted upon, where a mere nominal fee is held subject to an easement which prevents the owner of the land from any use of the property, is applicable to cases where there has been a public dedication of the property for public use. A right in property which is reserved by its owner, although subject to an easement of other private individuals, is property for which the state, or those acting under authority conferred by the state, must pay if the property is to be condemned for a public use. If the owner of abutting property is awarded the value of his easement in the property taken, he can have no cause of complaint because the owner of the fee is awarded the value of the fee; and in my view of the effect of this evidence the owners of the lots abutting on this canal have received the value of their easement which has been appropriated by the acquisition of the canal for a public street. The result is that, so far as the order confirms the award by the commissioners to the Mott Haven Docks, it must be reversed, and the report sent back to the commissioners, with directions to make this award to unknown owners.

The city of New York insists in its appeal that the award made by

101 N.Y.S.—26

the commissioners for the fee of the bed of the canal is so excessive as to indicate that an erroneous principle must have been adopted by them in estimating the value of the property. But I do not think that we would be justified in overruling the judgment of the commissioners in apportioning the amount that they fixed as the value of the property taken among the several claimants; and, as between the owners of the easements and the owners of the fee of the canal, I think the apportionment was not so clearly erroneous as to justify an interference.

Many other questions are presented upon this appeal, but we do not think that any of the other objections raised to the report would justify us in disturbing the report of the commissioners.

It follows, therefore, that the order appealed from must be reversed, and the report sent back to the commissioners, with direction to award the sum of $36,740 for the fee of the bed of the canal to unknown owners, and the report in other respects to stand. All concur.

MUNICIPAL CORPORATIONS—TORTS—USE OF STREET.

